# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL EDWARD HOFFMAN,<br><br>　　　　　　Plaintiff,<br>vs.<br>IMPACT CONFECTIONS, INC., a Colorado corporation; and DOES 1 through 100, inclusive,<br><br>　　　　　　Defendants. | CASE NO. 06cv0489 BTM(NLS)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

Defendant Impact Confections, Inc. ("Defendant" or "Impact") has filed a motion for summary judgment. Plaintiff did not file an opposition. For the reasons set forth below, Defendant's motion is **GRANTED**.

## I. ALLEGATIONS OF THE COMPLAINT

On March 28, 2001, Plaintiff Carl Edward Hoffman ("Plaintiff" or "Hoffman") and Glade Thibodo established Ollie Pop Bubble Gum Company as a California general partnership (the "Ollie Pop Partnership"). (First Am. Compl. ¶ 8.) On or about June 11, 2001, the Ollie Pop Partnership formed a California corporation, Ollie Pop Bubble Gum Co., Inc. ("Ollie Pop"). (Id. at ¶ 9.) Hoffman was President and Chief Operating Officer of Ollie Pop. (Id.)

In early 2003, Hoffman came up with the concept of marketing novelty gum and candy "which was designed to combine the popularity of NASCAR and its drivers with the lure of the chew tobacco favored by many of NASCAR's fans by providing a gum or candy in an

original new packaging intended to appeal to all ages." (Id. at ¶ 11.) Hoffman contemplated two different packaging options, both of which would be marketed and sold under the mark "Pit Crew Chew." (Id. at ¶ 12.) The first packaging option was a pouch containing gum or candy. (Id.) The second packaging option was a plastic container shaped like a tire and wheel that would also contain gum or candy. (Id.) The products were to be licensed by NASCAR and bear NASCAR's logos. In addition, the products were to be endorsed by at least one NASCAR driver and would display the driver's image and/or his car and/or associated number. (Id.)

Hoffman designed both packages and began working with Motorsports Management, Inc. ("Motorsports") to establish a relationship between Ollie Pop and NASCAR. (Id. at ¶ 13.) Hoffman also entered into discussions with Joe Gibbs Racing to have one of its drivers endorse the product. (Id. at ¶ 14.) Through Joe Gibbs Racing and Motorsports, Hoffman was able to obtain the promise of an endorsement from Tony Stewart. (Id. at ¶ 15.) In 2003, Hoffman entered into negotiations with Impact regarding the marketing and selling of "Pit Crew Chew" products. (Id. at ¶ 16.)

On or about May 12, 2003, Ollie Pop and Impact entered into a written non-disclosure agreement ("Non-Disclosure Agreement"). (Ex. A to First Am. Compl.) As part of his discussions with Impact, Hoffman allegedly disclosed confidential information and materials to Impact, including, but not limited to, the idea/concept of marketing and selling a NASCAR and NASCAR driver endorsed bubble gum, the idea/concept of providing gum and/or candy in a package which would appeal to NASCAR fans' noted fondness for "chew," and the specific drawings of both the pouch and wheel to be marketed and sold. (Id. at ¶ 18.) Hoffman also introduced Impact employees to Motorsports employees.

In July of 2003, Impact submitted an application for a license to NASCAR seeking to market and sell "Pit Crew Chew" products with the NASCAR logos in place. (Id. at ¶ 20.) Following Impact's submission of the licensing application to NASCAR, Chris Biby (of Motorsports) informed Impact and Ollie Pop that NASCAR was indeed interested in licensing the "Pit Crew Chew" products. (Id. at ¶ 21.) By August 2003, Dale Earnhardt, Jr. was

interested in endorsing "Pit Crew Chew" products.  (Id. at ¶ 22.)

About the beginning of September 2003, Impact abruptly ended its relationship with Ollie Pop and Hoffman.  (Id. at ¶ 24.)  With the failure to launch "Pit Crew Chew" products, Ollie Pop encountered financial difficulties.  (Id. at ¶ 25.)  On September 4, 2004, the Ollie Pop Partnership formally dissolved itself and withdrew from Ollie Pop. (Id.)  Ollie Pop granted Hoffman all right, title, and interest in and to and all intellectual property rights related to the "Pit Crew Chew" mark and products, all rights of Ollie Pop under the Non-Disclosure Agreement, and all patent and copyright rights relating to the tire and wheel design and artwork.  (Id. at ¶ 26.)

In 2005, Hoffman obtained copyright registrations for the two-dimensional artwork on Ollie Pop's candy wheel design.  (Exs. B, C, and D to First Am. Compl.)

In 2005, Hoffman learned that Impact had launched its own product, "Champion Chew."  (Id. at ¶ 27.)  The product consisted of gum enclosed in a tire and wheel and was designed to bear a resemblance to "chew" tobacco.  (Id. at ¶ 28.)  "Champion Chew" was licensed by NASCAR and was endorsed by one of NASCAR's drivers.  (Id.)

Hoffman's First Amended Complaint asserts the following claims: (1) misappropriation of trade secrets; (2) intentional interference with economic relationships; (3) negligent interference with economic relationships; (4) breach of contract; (5) breach of implied contract; (6) copyright infringement; (7) quantum meruit; (8) unfair business practices in violation of Cal. Bus. & Prof. Code § 17200 and California common law; (9) constructive trust/accounting; and (10) injunctive relief.

## II. STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman

1  v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute is genuine if a reasonable jury could
2  return a verdict for the nonmoving party.  Anderson, 477 U.S. at 248.

3        A party seeking summary judgment always bears the initial burden of establishing the
4  absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The moving party can
5  satisfy this burden in two ways: (1) by presenting evidence that negates an essential element
6  of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to
7  establish an essential element of the nonmoving party's case on which the nonmoving party
8  bears the burden of proving at trial.  Id. at 322-23.  "Disputes over irrelevant or unnecessary
9  facts will not preclude a grant of summary judgment."  T.W. Elec. Serv., Inc. v. Pacific Elec.
10 Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

11       Once the moving party establishes the absence of genuine issues of material fact, the
12 burden shifts to the nonmoving party to set forth facts showing that a genuine issue of
13 disputed fact remains.  Celotex, 477 U.S. at 314.  The nonmoving party cannot oppose a
14 properly supported summary judgment motion by "rest[ing] on mere allegations or denials
15 of his pleadings."  Anderson, 477 U.S. at 256.  When ruling on a summary judgment motion,
16 the court must view all inferences drawn from the underlying facts in the light most favorable
17 to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
18 587 (1986).

19

20                   **III.  DISCUSSION**

21       Impact moves for summary judgment on all of Hoffman's claims.  Hoffman did not file
22 an opposition to Impact's motion.  For the reasons discussed below, Impact's motion is
23 granted in its entirety.

24

25 A.      Breach of Contract & Breach of Implied Contract

26       Hoffman alleges that Impact breached the Non-Disclosure Agreement (Ex. B to Decl.
27 of Brad Baker) by making use of "confidential" information, as defined by the agreement, and
28 by conducting business with individuals and/or entities introduced to Impact by Ollie Pop.

Hoffman also alleges that Impact breached an implied contract to compensate Ollie Pop for the use of its information, concepts, materials, and ideas when and if Impact used them.

Hoffman's contract claims fail because he lacks standing to bring them. The Non-Disclosure Agreement and purported implied contract were between Ollie Pop and Impact, not Hoffman and Impact. After Ollie Pop Partnership withdrew from Ollie Pop, Hoffman and Ollie Pop (in addition to other parties) entered into a Settlement Agreement. (Ex. B to Decl. of Dylan Baker.) Pursuant to the terms of the Settlement Agreement, Ollie Pop executed a formal assignment which assigned, transferred, and conveyed to Hoffman any and all right, title, and interest Ollie Pop had in "the artwork, trademark, goodwill and intellectual property of 'Pit Crew Chew,' including but not limited to U.S. Trademark serial no. 76527443, filed on June 23, 2003 with the U.S. Patent and Trademark Office." (Ex. C to Decl. of Dylan Baker.) The Settlement Agreement did not, however, transfer any rights under the Non-Disclosure Agreement or any other contract between Ollie Pop and Impact. The Settlement Agreement states that it "represents the entire agreement of the parties." (Settlement Agreement ¶ 8.) Dylan Baker, who became CEO of Ollie Pop after Hoffman's resignation and is a signatory to the Settlement Agreement, confirms that Ollie Pop never assigned to Hoffman any portion of the Non-Disclosure Agreement. (Decl. of Dylan Baker ¶ 13.)

Accordingly, Hoffman lacks standing to sue for breach of the Non-Disclosure Agreement or any implied agreement between Impact and Ollie Pop. Furthermore, there is no evidence that Impact breached the Non-Disclosure Agreement. The Non-Disclosure Agreement defines "Confidential Information" as follows:

> Definition of "Confidential Information". As used herein, "Confidential Information" means any and all non-public, confidential and proprietary information, as well as the intellectual property rights embodied therein (including patent, copyright, trademark, trade secrets and other intellectual property rights), disclosed by one party (the "Disclosing Party") to the other party (the "Receiving Party"), including, without limitation, each party's information concerning contracts, research, experimental work, development, literary works, marketing and creative concepts, financial information, business forecasts and sales and marketing plans. Any Confidential Information disclosed in tangible form shall be clearly marked as "confidential," "proprietary" or words of similar import. Any Confidential Information disclosed orally shall be identified as confidential at the time of its disclosure and the Disclosing Party shall make reasonable efforts to reduce such Confidential Information to writing and to provide it to the Receiving Party within twenty (20)

days of its disclosure.  The existence of any business negotiations, discussions, consultations, or agreements in progress between the parties shall also be considered "Confidential Information."

Hoffman alleges that his idea of marketing and selling NASCAR driver endorsed bubble gum in a package, such as a plastic wheel, that would appeal to NASCAR's fans' fondness for chew, was confidential, proprietary information.  However, Brad Baker, founder and President of Impact, declares that at no time did Ollie Pop ever provide Impact with tangible materials of any kind that were marked "Confidential," or "Proprietary."  (Decl. of Brad Baker ¶ 14.)  Nor did Ollie Pop ever advise Impact that any information which was being conveyed orally was confidential.  (Id.)  Hoffman has not presented the Court with any evidence that it designated its ideas regarding "Pit Crew Chew" as "confidential" under the terms of the Non-Disclosure Agreement.

Similarly, there is no evidence that Impact breached the Non-Disclosure Agreement's prohibition against contacting or conducting business with "any entity or individual introduced by Discloser or its affiliates, directly or indirectly without the expressed written consent of Discloser for a period of three (3) years from the date of this Agreement."  (Non-Disclosure Agreement, ¶ 2(a).)  During Impact's involvement with Ollie Pop, Ollie Pop was pursuing a joint venture agreement for "Pit Crew Chew" with Motorsports Management International LLC in its capacity as an agent for the driver Tony Stewart, and Joe Gibbs Racing.  (Decl. of Brad Baker ¶ 18.)  After Ollie Pop terminated its relationship with Impact, Impact retained Jim Humphries of Elite Sports to negotiate non-exclusive, limited sponsorship agreements with Biaggi Brothers Racing LLC and Mike Wallace Racing for "Champion Chew."  (Id. at ¶ 19.)  At no time during Impact's business relationship with Ollie Pop did Ollie Pop have discussions with Mike Wallace, Biaggi Brothers Racing LLC, or Elite Sports regarding "Pit Crew Chew."

Thus, even if Hoffman had standing to sue under the Non-Disclosure Agreement, there is no evidence that Impact breached the agreement.

B.  <u>Misappropriation of Trade Secrets</u>

Hoffman alleges that Impact misappropriated its trade secrets, consisting of the designs, plans, ideas, concepts, and other proprietary materials regarding "Pit Crew Chew."

California's Uniform Trade Secrets Act defines a trade secret as follows:

> "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d). Even if the concepts and plans concerning "Pit Crew Chew" satisfy the first prong of this definition, Impact has presented evidence that Ollie Pop did not make reasonable efforts to maintain the secrecy of the information. As already discussed, under the Non-Disclosure Agreement, the parties were required to take certain steps to designate information as confidential. Because Ollie Pop never designated the information at issue as "confidential," the information was not protected by the agreement. Hoffman has not presented evidence that Ollie Pop took other reasonable steps to maintain the secrecy of the information. Therefore, Impact is entitled to summary judgment on this claim.

C.  <u>Copyright Infringement</u>

Hoffman alleges that Impact violated his copyrights in connection with the artwork on the "Pit Crew Chew" packaging. However, the evidence does not support Hoffman's infringement claim.

To establish copyright infringement, the plaintiff must prove ownership of the work in question, access to the work by the defendant, and substantial similarity of both the general ideas and the expression of those ideas. <u>Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.</u>, 562 F.2d 1157, 1164 (9th Cir. 1977). Proof of substantial similarity is satisfied by a two-part test. Under the extrinsic test, the focus is on whether the two works share a similarity of ideas and expression as measured by external, objective criteria.

1  Swirsky v. Carey, 376 F.3d 841, 845 (9th Cir. 2004).  Once the extrinsic test is satisfied, the
2  factfinder applies the intrinsic test.  Three Boys Music Corp. v. Bolton, 212 F.3d 477, 485 (9th
3  Cir. 2000).  The intrinsic test is subjective and asks whether the ordinary, reasonable person
4  would find the "total concept and feel of the works" to be substantially similar.  Id.  For
5  purposes of summary judgment only the extrinsic test is relevant.  Swirsky, 376 F.3d at 845.

6       Hoffman obtained copyrights in connection with the two-dimensional artwork on the
7  "Pit Crew Chew" wheel packaging.  (Exs. B-D to the First Am. Compl.)  The artwork is shown
8  in Exhibit A to the Declaration of Jon Schurke.  The artwork for the front of the packaging
9  depicts a wheel consisting of a gray hubcap with circular holes and a yellow-rimmed tire with
10 the words "Pit Crew Chew" in yellow block letters on the top of the tire, a yellow dot on the
11 left side, a yellow line on the right side, the number and name of a NASCAR driver (Tony
12 Stewart, Dale Earnhardt, Jr., or Jeff Gordon) underneath the yellow dot, the flavor of the gum
13 identified underneath the yellow line, and the NASCAR logo at the bottom of the tire.  The
14 artwork for the side is a label that shows the flavor of the gum – e.g., "Original."  The artwork
15 for the back is similar to the artwork for the front except that instead of the NASCAR logo,
16 flavor information, and number/name of the NASCAR drivers, the label includes the bar code
17 and lists the ingredients.

18       The artwork for the "Champion Chew" packaging (Ex. D to Decl. of Brad Baker;
19 "Champion Chew" candy container lodged with Chambers) is not substantially similar to the
20 copyrighted two-dimensional art work for "Pit Crew Chew."  The hub cap on the "Champion
21 Chew" packaging is molded in plastic and has raised spokes, a raised valve stem, and raised
22 circles in the middle.  The tire portion of the wheel contains the words "Champion Chew" in
23 white block letters outlined in red on the top, the signature of Mike Wallace on the left,
24 Wallace's number "4" on the right, the yellow words, "First it's Candy . . . Then it's Gum!" on
25 the bottom, and below that, the words "Artificially Flavored Dextrose Candy With Gum Pieces
26 · NET WT. 1.23 Oz. (35g) · 10 Tablets · Ages 4 & Up."  The NASCAR logo is on a sticker on
27 the side of the packaging.  The back of the packaging  lists the ingredients, barcode, and
28 other information.

1    Although both the "Pit Crew Chew" art work and "Champion Chew" artwork generally depict tires and display NASCAR car numbers and the NASCAR logo (a necessity if NASCAR or its drivers sponsor the product), there is little similarity between the two. The design, font, color scheme, and words are all different. Therefore, Impact is entitled to summary judgment on Hoffman's copyright infringement claim.

D.   Remaining Claims

Hoffman's remaining claims of intentional interference with economic relationships, negligent interference with economic relationships, quantum meruit, unfair business practices, constructive trust/accounting, and injunctive relief are based on Impact's alleged infringement of copyright and misappropriation of trade secrets and confidential information. Because the underlying claims of infringement and misappropriation of trade secrets and confidential information fail, these derivative claims fail as well.

Moreover, Impact is entitled to summary judgment on many of these claims because Hoffman has failed to produce any evidence of damages. Hoffman never provided to Impact a computation of damages as required by Fed. R. Civ. P. 26(a)(1)(A)(iii). (Tabrisky Decl. ¶ 3.) In addition, Hoffman has failed to produce any documents in response to requests for production of documents pertaining to his claim for damages. (Id. at ¶ 6.) Hoffman has not shown that his failure to comply with the requirements of Rule 26 was harmless or substantially justified. See Fed. R. Civ. P. 37(c). Therefore, Hoffman is barred from presenting evidence of damages, and Hoffman cannot prevail on any claim of which damages is an essential element. Id. See also Use Techno Corporation v. Kenko USA, Inc., 2007 WL 4169487 (N.D. Cal. Nov. 20, 2007) (holding that defendant was entitled to summary judgment based on plaintiff's failure to disclose their damages computation).

## IV. CONCLUSION

For the reasons discussed above, Defendant's motion for summary judgment is **GRANTED**. The Clerk shall enter judgment in favor of Defendant and against Plaintiff on all

of Plaintiff's claims.

**IT IS SO ORDERED.**

DATED: February 14, 2008

*/s/ Barry Ted Moskowitz*

Honorable Barry Ted Moskowitz
United States District Judge